## PEOPLE v. MILLER, appellant.

*Statute construction — chapter 492, Laws of 1870 — insurance department — official perquisites.*

The general appropriation act of 1870 (chap. 492) contains the following : "For the insurance department for compensation of clerks, furniture, books, printing, stationery, and other incidental expenses, $30,000, and $7,000 for expenses of moving offices and fitting same up, and to provide necessary office accommodation for the department in New York. The aforesaid sums to be repaid to the treasury by the insurance companies, pursuant to chapter 366 of Laws of 1869, and amendments thereto ; and hereafter, on transfer of securities, one-fifth of one per cent on the amount transferred to be paid by the company making the transfer *to the superintendent of the insurance department.*"

*Held,* that it was intended that the one-fifth of one per cent should go to the superintendent of the insurance department as a perquisite, and not to the State.

APPEAL from an order of the special term overruling a demurrer to the complaint. The facts appear in the opinion.

*G. W. Miller, in pro. per.*, for appellant.

*F. C. Barlow,* attorney-general, for respondent.

PARKER, J. This action is brought to recover of the defendant certain moneys paid to him while superintendent of the insurance department of the State of New York, which it is claimed belong to the State.

The complaint sets forth that the defendant was, from May, 1870, to May, 1872, superintendent of the insurance department, and that for his services as such officer he received a stated compensation given him by law. That the legislature of the State, by an act entitled "An act making appropriations for certain expenses of government, and for supplying deficiencies in former appropriations," passed April 28, 1870 (chap. 492), did, among other things, provide as follows: "For the insurance department, for compensation of clerks, furniture, books, printing, stationery, and other incidental expenses, $30,000, and $7,000 for expenses of moving offices and fitting same up, and to provide necessary office accommodation for

People v. Miller.

the department in New York. The aforesaid sums to be repaid to the treasury by the insurance companies pursuant to chapter 366 of Laws of 1869, and amendments thereto, and hereafter, on transfer of securities, one-fifth of one per cent on the amount transferred to be paid by the company making the transfer *to the superintendent* of the insurance department."

That under the provisions of this act, large sums of money, which were the said one-fifth of one per cent on the amount of securities and deposits transferred by certain companies, were paid over and duly received by defendant as such superintendent [specifying the amounts particularly], which moneys so paid it was the duty of the defendant to have paid over to the treasury of the State, within a reasonable time from his receipt thereof; yet, that the defendant, in disregard of his duty, has neglected so to pay over said moneys or any part thereof, though a reasonable time has elapsed, etc. Wherefore, the plaintiffs demand judgment against the defendant, for the sums so paid to and received by the defendant, amounting to $5,070.80, with interest, etc.

To the complaint the defendant demurred, on the ground that it does not state facts sufficient to constitute a cause of action.

The special term overruled the demurrer, and from the order overruling the demurrer the defendant appeals to the general term.

The sole question is, whether the one-fifth one of *per cent* was to be received by the superintendent for his own use, or was to be paid by him into the treasury of the State. After a careful examination of the case, I am inclined to think the construction given to the provision of law in question, by the special term, is erroneous.

Although the policy of the statute is to pay all the expenses of the insurance department, out of funds derived from fees, etc., received from, and assessments made upon the companies, from which it might seem that the one-fifth of one per cent was intended to go into such fund, still, such fund is completely provided for by section 7 of the act of 1859 (Laws of 1859, chap. 366, § 7), so that this percentage is not needed for, nor applicable to, nor usable for any such purpose. All the expenses of the department being specifically provided for from funds derived from the companies, in other ways, it is by no means probable that the legislature intended that this percentage should go into the treasury, there to lie unappropriated and unused. No argument, therefore, can be drawn from the general policy of the statute above referred to, in favor of the con-

struction giving the *percentage* to the State; but, the fact that it is not to be used like other moneys derived from the companies, in defraying the expenses of the department, tends rather to the inference that it is not to go into the treasury at all, but, as a perquisite, to the superintendent, to whom it is directed to be paid, although not, in terms, declared to be a perquisite. Moreover, the terms of the statute itself very strongly indicate the latter intention. The words " to be repaid to the treasury," applied to the sums of $30,000 and $7,000 therein above specifically appropriated, followed, in the same sentence, by the words " to be paid to the superintendent," applied to the percentage in question, show a different intent in regard to the two payments by the companies provided for by this statutory provision — one was to go into the treasury, that is, to the State — the other not, but to the superintendent — and the contrast, in the directions given, shows that the payment to the superintendent, not being destined for the treasury for public use, was to be for the superintendent personally, as a perquisite for his labor, care and responsibility in making the transfer and exchange of securities contemplated.

This construction is strengthened by the fact, that in 1871 (Laws of 1871, chap. 709, § 1) the seventh section of the act of 1859 (being the one making provision for the fund from which the expenses of the department are to be paid) was amended with a view to the increase of the fund, and in such amendment, the percentage to arise upon transfers of securities was not added to the fund. From this an inference arises, that it was not then deemed applicable to that fund, but belonged to the superintendent, under the act of 1870, by which it was created. Again, in 1872 (Laws of 1872, chap. 541), provision is made for the payment into the treasury of " all fees and perquisites of every name and nature, charged, received and collected by the insurance department, or any officer thereof. Inasmuch as the percentage upon the transfer of securities constituted the only perquisite received by the insurance department, or any officer thereof, at the time of the passage of this law, the insertion of this provision is a legislative construction of the former provision, by which the one-fifth of one per cent was required to be paid to the superintendent, recognizing it as a perquisite to him, up to that time.

In answer to all this it is urged that the superintendent was compensated for his services by a salary. Also that the payment of the

one-fifth of one per cent in question to him is not declared to be as a fee or perquisite, and hence, as he is a public officer, the inference is that he is to receive it as a trustee for the public. That he is a salaried officer does not show that the payment to him was not for his own benefit, since it is by no means uncommon that provision is made for giving to such officers perquisites in addition to their salaries. And as to the want of a specific declaration in the statute that such one-fifth of one per cent is to be paid to him as a perquisite, that, I think, is supplied by the circumstances above alluded to, showing that it was not intended for public use, and must, therefore, necessarily have been intended for the use of the officer to whom it was to be paid.

How much soever we may think the superintendent overpaid, by the provision in question added to his already generous salary, no reasoning that I deem admissible in the construction of this statute enables me to conclude that this percentage was intended for the public rather than for the superintendent.

I am of the opinion, therefore, that the order overruling the demurrer should be reversed, and the demurrer sustained, with costs. The plaintiffs to be at liberty, on payment of costs of the demurrer, to amend their complaint.

POTIER, J., concurred.

BOARDMAN, J., dissented.

*Order reversed.*